UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
CHATTANOOGA DIVISION

| | |
|---|---|
| RUDOLPH P. KESZTHELYI, | ) |
| | ) |
| Plaintiff, | ) No. 1:06-cv-108 |
| | ) |
| v. | ) Chief Judge Curtis L. Collier |
| | ) |
| TUNE, ENTREKIN & WHITE, P.C., and | ) |
| PETER J. STRIANSE, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM

Defendants Tune, Entrekin & White, P.C., and Peter J. Strianse ("Defendants") move the Court to dismiss the complaint of Plaintiff Rudolph P. Keszthelyi ("Plaintiff") for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(6) (Court File Nos. 12, 13). Plaintiff filed two responses (Court File Nos. 16, 17), and Defendants filed no reply.

In accordance with the following, the Court will **GRANT** Defendants' motion to dismiss (Court File No. 12), and will **DISMISS** Plaintiff's claims.

### I. FACTS

On July 5, 2000, Plaintiff entered a plea agreement, pleading guilty to two counts of an indictment: knowingly engaging in a monetary transaction in criminally derived property, 18 U.S.C. § 1957; and, distributing cocaine hydrochloride, 21 U.S.C. § 841 (Court File No. 12, Exhibit C; *United States v. Keszthelyi*, No. 1:99-cr-100 (E.D. Tenn. filed Oct. 8, 1999) (Edgar, J)). In the plea agreement, Plaintiff agreed to forfeit funds he had in Hartford Mutual Funds and American General

Annuity ("assets") in their entirety (Court File No. 12, Exhibit C). Although Plaintiff knew that most of the funds were actually money his father had given Plaintiff to invest on his father's behalf, Plaintiff agreed to forfeit all the money in the hope the Government would seek a lesser sentence as a result (Court File No. 16, Exhibit B, p. 2). Plaintiff believed, with a shorter prison sentence, he would have time to repay his father's money (*id.*).

On that same day, Plaintiff agreed to forfeit assets as proceeds of and property used to facilitate drug distribution activities in an Agreed Preliminary Order of Forfeiture (Court File No. 13, pp. 2-3). Also, during his plea colloquy on that same day, Plaintiff verbally agreed not to contest civil forfeiture of the assets (Court File No. 12, Exhibit B, p. 29). During the colloquy, Plaintiff asserted not all the assets were the product of illegal drug activity (*id.*, p. 28). However, upon clarification, Plaintiff confirmed that a portion of the assets were drug-related, and Plaintiff expressly consented to not contest forfeiture of all the money in the accounts (*id.*, pp. 28-29).

Plaintiff was sentenced on November 6, 2000. *Keszthelyi*, No. 1:99-cr-100, Court File No. 97.

On January 5, 2001, Plaintiff's wife, Kimberly Hawkins-Keszthelyi, to whom Plaintiff had given power-of-attorney (Court File No. 12, Exhibit E, p. 4), signed a Consent Decree for Forfeiture ("Consent Decree") of the assets. The Consent Decree contains the statement that Plaintiff "agree[s] that [the assets] constitute proceeds from the distribution of cocaine hydrocholoride . . ." (*id.*, p. 1). The Consent Decree also states Plaintiff was the "true owner[]" of the assets and agreed to forfeit them (*id.*, p. 2). This Consent Decree provided time for others with claims to the assets to be heard (*id.*). The Final Order of Forfeiture was entered on September 14, 2001 (Court File No. 12, Exhibit F). Shortly after the Final Order of Forfeiture was issued, Defendant Strianse ceased representing

Plaintiff (Court File No. 13, p. 2).

On August 5, 2003,[1] Plaintiff filed a motion with the Court to set aside the civil forfeiture, alleging the money in the accounts belonged to his father (*Keszthelyi*, No. 1:99-cr-100, Court File Nos. 122-123). Judge R. Allan Edgar denied the motion on August 8, 2003 (*id.*).

Plaintiff asserts he did not know of the Consent Decree until December 21, 2005, when it was used by the Government to rebut his father's claim to have the forfeited money returned (Court File Nos. 1, p. 3; 17, p. 2). Plaintiff's father has a pending case in this court in which he is seeking to have the forfeited money restored. *See Keszthelyi v. United States*, No. 1:05-cv-303 (E.D. Tenn., filed Oct. 27, 2005) (Edgar, J.).

Plaintiff filed a complaint in the United States District Court for the Middle District of Tennessee at Nashville against Defendants[2] on April 13, 2006 (Court File No. 13, Exhibit A). The case was transferred to this court on May 2, 2006 (Court File No. 1).

## II.     STANDARD OF REVIEW

---

[1] Defendants assert the filing date was August 5, 2003 (Court File No. 13, p. 8). The docket notes receipt of Plaintiff's motion on July 23, 2003, but also contains an acknowledgment of the Government's receipt of the motion on August 5, 2003 (*Keszthelyi*, No. 1:99-cr-100, Court File Nos. 122-123). This discrepancy is not dispositive of any issue, and the Court uses the later date of August 5, 2003 because this later date is more favorable to Plaintiff in relation to any statute of limitations and Defendants assert it to be the proper date for consideration (*see* Court File No. 13, p. 8).

[2] Defendants moved to dismiss Defendant Tune, Entrekin & White, P.C. because Plaintiff had not made a direct or inferential assertion of liability against the law firm, but only against Defendant Strianse, his former attorney (Court File No. 13, p. 3). In Plaintiff's response, he asserts Defendant Tune, Entrekin & White, P.C. is jointly and severally liable for Defendant Strianse's actions, as Defendant Strianse is a partner in the firm (Court File No. 17, pp. 1-2). Defendants have not responded and thus have not refuted this claim. As such, the Court will consider the Defendants equally liable in its analysis at this stage.

In reviewing a Fed. R. Civ. P. 12(b)(6) motion to dismiss, the Court construes the complaint in the light most favorable to the plaintiff, *Bloch v. Ribar,* 156 F.3d 673, 677 (6th Cir. 1998), accepts the complaint's factual allegations as true, *Broyde v. Gotham Tower, Inc.*, 13 F.3d 994, 996 (6th Cir. 1994), and determines whether the plaintiff has pleaded "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, __ U.S. __, 127 S. Ct. 1955, 1974 (May 21, 2007) (rejecting traditional Fed. R. Civ. P. 12(b)(6) standard set forth in *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)). The Court may not grant a 12(b)(6) motion based upon its disbelief of a complaint's factual allegations, *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995), nor should the Court weigh the evidence or evaluate the credibility of witnesses, *id.* (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). The question is not whether the plaintiff will ultimately prevail but whether "the claimant is entitled to offer evidence to support the claims." *Kroll v. United States*, 58 F.3d 1087 (6th Cir. 1995); *Ecclesiastical Order of the Ism. of Am., Inc. v. Internal Revenue Serv.*, 725 F.2d 398, 403 (6th Cir. 1984). At the same time, bare assertions of legal conclusions are insufficient, and the complaint "must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988).

**III. ANALYSIS**

Plaintiff admits he willingly relinquished the entirety of the funds in the Hartford Mutual Funds and American General Annuity prior to sentencing (Court File No. 16, Exhibit B, p. 2). Plaintiff asserts the majority of the funds belonged to his father, for whom he was investing the money as his father was abroad, and the funds were not drug-related (*id.*). However, he agreed to

4

relinquish the funds because he believed it would lessen his sentence (*id.*). Plaintiff was then sentenced to a period substantially longer than he had anticipated (*id.*).

Plaintiff now asserts his attorney at the time, Defendant Strianse, committed malpractice, breach of contract, and common law fraud and deceit, when Defendant Strianse signed the Consent Decree; failed to prevent Plaintiff's wife, who had power-of-attorney, from doing so; and, failed to convey the Consent Decree to Plaintiff, because Defendant Strianse knew the majority of the assets were not drug-related and belonged to Plaintiff's father (*see* Court File Nos. 1, p. 3; 17, pp. 4-5). Plaintiff further asserts malpractice because Defendant Strianse failed to prevent him from initially agreeing to forfeit the full amount of the assets, and failing to inform him the entire amount of the assets would be used in calculating his sentence (Court File No. 17, pp. 4-5).

The Court will address Plaintiff's claims individually. For the following reasons, the Court will **GRANT** Defendants' motion to dismiss (Court File No. 12).

### A. Attorney Malpractice

Plaintiff asserts Defendants knew the statements in the Consent Decree relating to the origin of the forfeited assets were false, and should not have permitted the document to be signed by Plaintiff's wife, but rather provided the document to him for review (Court File No. 1, p. 3). Plaintiff also asserts malpractice in relation to his sentencing (Court File No. 17, pp. 4-5). To establish legal malpractice under Tennessee state law, a plaintiff must prove: "(1) that the accused attorney owed a duty to the plaintiff, (2) that the attorney breached that duty, (3) that the plaintiff suffered damages, (4) that the breach was the cause in fact of the plaintiff's damages, and (5) that the attorney's negligence was the proximate, or legal, cause of the plaintiff's damages." *Dorrough v. Tarpy*, 2008 WL 185804, \*\*1-2 (6th Cir. January 22, 2008) (*citing Gibson v. Trant*, 58 S.W.3d

5

103, 108 (Tenn. 2001)).

A plaintiff must commence his action within one year after the cause of action accrued. Tenn. Code Ann. § 28-3-104(a)(2). "In general, a cause of action for legal malpractice accrues when a client (1) has suffered a legally cognizable injury resulting from an attorney's negligence and (2) the client knows or, in the exercise of reasonable diligence should know, facts sufficient to give notice of that injury." *Carmack v. Oliver*, 2007 WL 4170824, *4 (Tenn. Ct. App. November 26, 2007) (*citing Carvell v. Bottoms*, 900 S.W.2d 23, 29-30 (Tenn. 1995)). "The one year legal malpractice statute does not begin to run until the attorney's alleged negligence has actually resulted in harm to the client." *Carmack*, 2007 WL 4170824 at *4 (*citing Cherry v. Williams*, 36 S.W.3d 78, 84 (Tenn. Ct. App. 2000).

Here, Plaintiff alleges Defendant Strianse signed a document he knew contained false facts which permitted the Government to obtain Plaintiff's father's property (Court File No. 17, p. 5). This document was then later used to rebut Plaintiff's father's claim to his assets (Court File No. 1, p. 3).

Plaintiff's allegation of malpractice is insufficient in several aspects. First, Plaintiff must show he has suffered injury. *See Dorrough*, 2008 WL 185804 at **1-2 (*citing Gibson,* 58 S.W.3d at 108). It is unclear what damages Plaintiff suffered. The assets in question, according to Plaintiff (Court File No. 16, Exhibit B, p. 2), belong to his father; any injury sustained from their loss was that of his father, and is being addressed in litigation in this Court by his father. *See Keszthelyi*, No. 1:05-cv-303. Plaintiff alleges he suffers shame in having to inform his father of the loss (*see* Court File No. 16, Exhibit B, p. 2). However, Plaintiff does not assert a legally-cognizable injury from the loss of the assets to support his malpractice claim.

Second, even if Plaintiff could base a malpractice suit on the loss of his father's assets, it was Plaintiff, and not Defendant Strianse, who caused that loss. *See Dorrough*, 2008 WL 185804 at **1-2 (*citing Gibson*, 58 S.W.3d at 108). Plaintiff signed two documents agreeing to the forfeiture of the entirety of the assets and agreeing those assets were drug-related (Court File No. 12, Exhibits C, D). At his sentencing, Plaintiff also agreed some of the assets were drug-related and expressly consented to not contest forfeiture of all the assets (Court File No. 12, Exhibit B, pp. 28-29). These actions caused the forfeiture of the assets. The Consent Decree, later signed by Defendant Strianse and Plaintiff's wife, to whom Plaintiff had granted power-of-attorney, was merely a reiteration of the representations Plaintiff had already personally made (*see* Court File No. 12, Exhibit E).[3]

Plaintiff also asserts his attorney committed malpractice when Defendant Strianse assured him the full amount of the assets would not be converted to a drug-equivalent for his sentence if he forfeited the entire amount of the assets, even though it ultimately was (Court File No. 17, pp. 4-5). To the extent Plaintiff was injured by this alleged misrepresentation, Plaintiff was sentenced on November 6, 2000. *Keszthelyi*, No. 1:99-cr-100, Court File No. 97. Plaintiff's injury was immediately apparent at his sentencing, in the form of a longer sentence, and it would have been clear to any reasonable person that his attorney's alleged negligence was the cause. *See Carmack*, 2007 WL 4170824 at *4. Hence, the statute of limitations for this claim began to run on November 6, 2000 and permitted Plaintiff to file a malpractice suit no later than November 6, 2001. *See* Tenn.

---

[3] Plaintiff argues the statute of limitations for malpractice should not begin to run until December 21, 2005 (Court File Nos. 1, p. 3; 17, p. 2). Because the Consent Decree cannot fairly be considered the cause of the forfeiture (nor, indeed, caused a legally-cognizable injury to Plaintiff), the Court cannot calculate the statute of limitations from December 21, 2005, the date Plaintiff alleges he first discovered the existence of the Consent Decree (*id.*).

7

Code Ann. § 28-3-104(a)(2).[4]  Plaintiff filed his claim here on April 13, 2006, well beyond the statutory period (Court File No. 13, Exhibit A).

Plaintiff further argues his attorney committed malpractice by not preventing him from agreeing to a total forfeiture initially, despite knowing the assets were not entirely drug-related (Court File No. 17, p. 5).  If that is the case, Plaintiff must have known of the injury, i.e. the forfeiture of the assets, and the alleged cause, i.e. his attorney's failure to stop him from consenting to false allegations and unjust forfeiture, no later than August 5, 2003, when Plaintiff filed a motion, moving the Court to set aside the civil forfeiture (*Keszthelyi*, No. 1:99-cr-100, Court File Nos. 122-123).  At that point, Plaintiff had one year, no later than August 5, 2004, to file his malpractice claim.  *See* Tenn. Code Ann. § 28-3-104(a)(2).  Plaintiff's complaint here, filed April 13, 2006, is well outside the applicable statute of limitations (Court File No. 12, Exhibit A).

In sum, Plaintiff's allegations concerning the loss of the assets are inadequate because Plaintiff has failed to show he suffered an injury from the loss, and that the alleged loss was caused by Defendants' actions.  Plaintiff's other allegations of malpractice are barred by the statute of limitations.  Accordingly, this Court will **GRANT** Defendants' motion to dismiss (Court File No. 12).

### B.    Breach of Contract

---

[4]Plaintiff appealed his sentence on November 14, 2000, and that appeal was denied on October 21, 2002. *Keszthelyi*, No. 1:99-cr-100, Court File Nos. 99, 117.  Plaintiff also filed a 28 U.S.C. § 2255 motion on June 16, 2003, challenging his sentence. *Keszthelyi v. United States*, Case No. 1:03-cv-217 (E.D. Tenn., Filed June 16, 2003), Court File No. 1.  Even if Plaintiff was not aware at his sentencing that his sentence was calculated with the assets converted to drug amounts, as Plaintiff claims was the case, he readily admits he was aware when he filed his § 2255 (Court File No. 17, p. 5).  Plaintiff filing here is still well outside the statute of limitations even if it was calculated from the date his appeal was denied, or the date he filed his § 2255 motion.

8

Plaintiff asserts Defendants are also liable under a breach of contract theory, because "[a] defense counsel has a contractual obligation to provide the best defense; not conceal 'back door' documents from his client" (Court File No. 17, p. 3). Unlike a malpractice claim, which has a statute of limitations of one year, a breach of contract claim has a six-year statute of limitations. *Compare* Tenn. Code Ann. § 28-3-104(a)(2) *with* Tenn. Code Ann. § 28-3-109(a)(3).

Although Plaintiff frames part of his claim as a breach of contract, it is still a malpractice-based claim and still subject to the one-year statute of limitations. The statute of limitations cited by Plaintiff (Court File No. 17, p. 3), provides as follows: "The following actions shall be commenced within six (6) years after the cause of action accrued: . . . [a]ctions on contracts *not otherwise expressly provided for*." Tenn. Code Ann. § 28-3-109(a)(3) (emphasis added). However, Plaintiff's breach of contract claim here *is* provided for elsewhere, as follows: "The following actions shall be commenced within one (1) year after cause of action accrued: . . . [a]ctions and suits against attorneys or licensed public accountants or certified public accountants for malpractice, *whether the actions are grounded or based in contract* or tort." Tenn. Code Ann. § 28-3-104(a)(2) (emphasis added). Defendants' alleged failure "to provide the best defense" is in essence a malpractice claim. *See Rose v. Welch*, 115 S.W.3d 478, 484 (Tenn. Ct. App. 2003) (holding that a breach of contract claim, when it involves an allegation that the attorney's conduct fell below the acceptable professional standard, is necessarily a legal malpractice claim).

Plaintiff's breach of contract claim is identical in nature and content to his malpractice claim, and subject to the same statute of limitations. In light of the analysis above concerning his malpractice claim, equally applicable here, the Court will **GRANT** Defendants' motion to dismiss (Court File No. 12).

### C. Common law fraud and deceit

Plaintiff asserts Defendants are also liable under a theory of common law fraud for their involvement in the signing of the Consent Decree (Court File No. 17, p. 3). Unlike a malpractice claim, which has a statute of limitations of one year, Plaintiff argues his fraud claim should be subject to a three-year statute of limitations. *Compare* Tenn. Code Ann. § 28-3-104(a)(2) *with* Tenn. Code Ann. § 28-3-105(b) (as an "action[] for the detention or conversion of personal property.")

Due to the nature and factual basis of Plaintiff's fraud claim, that claim shares the same one-year statute of limitations as a malpractice claim. It is established Tennessee law that "the gravamen of an action, rather than its designation as an action for tort or contract, determines the applicable statute of limitations." *Liggett v. Brentwood Builders, LLC*, 2008 WL 836115, *3 (Tenn. Ct. App. 2008) (*citing Pera v. Kroger Co.*, 674 S.W.2d 715, 719 (Tenn. 1984) *and Whaley v. Perkins*, 197 S.W.3d 665, 670 (Tenn. 2006)); *accord Kirby Farms Homeowners Ass'n v. Citicorp, Citibank, N.A.*, 773 S.W.2d 249, 251 (Tenn. Ct. App. 1989) ("The word 'actions' in T.C.A. § 28-3-105 refers to the subject matter of the controversy and not to the remedial procedure.")

Here, Plaintiff's fraud claim is based upon Defendants' failure to reject the Consent Decree on Plaintiff's behalf and failure to prevent Plaintiff from signing the Agreed Preliminary Order of Forfeiture, because Defendants knew or should have known the entirety of the assets were not drug-related, as those documents assert (*see* Court File No. 17, pp. 4-6). Plaintiff's claim Defendants failed to fulfill the professional duties owed to him as his legal representation is exactly the nature of a malpractice suit. *See Dorrough*, 2008 WL 185804 at **1-2 (*citing Gibson*, 58 S.W.3d at 108). Therefore, Plaintiff's fraud claim shares the statute of limitations of his malpractice claim, i.e. one year. *See* Tenn. Code Ann. § 28-3-104(a)(2); *Liggett*, 2008 WL 836115 at *3; *Kirby Farms*, 773

S.W.2d at 251.

The application of the one-year statute of limitations to Plaintiff's fraud claim is further warranted because it is unclear whether Plaintiff even alleges a fraud claim. Plaintiff is not seeking damages for fraud, i.e. the value of the forfeited assets and loss of subsequent interest (*see* Court File No. 1, p. 4). Indeed, Plaintiff acknowledges the assets do not belong to him, but his father - and thus any recoverable injury suffered due to a loss of the assets would be suffered by Plaintiff's father, not Plaintiff (*see* Court File No. 16, Exhibit B, p. 2). His father is already seeking recovery of the assets in a separate action. *Keszthelyi*, No. 1:05-cv-303. Plaintiff seeks $500,000 dollars in compensatory damages and $500,000 in punitive damages, because "Defendant Peter J. Strianse violated the Rule of Professional Conduct by willful misconduct, legal malpractice and fraudulent misrepresentation" (Court File No. 1, p. 4). The alleged violation of Defendants' professional responsibilities, which is the traditional content of a malpractice suit, is the focus of Plaintiff's claim and the cause of the alleged damages (*see id.*).

Since Plaintiff's fraud claim retains the nature of a malpractice suit, it is subject to a one-year statute of limitations. As such, the above analysis relating to Plaintiff's malpractice claim is equally applicable. As such, the Court will **GRANT** Defendants' motion to dismiss (Court File No. 12).

**IV. CONCLUSION**

For the foregoing reasons, the Court will **GRANT** Defendants' motion to dismiss (Court File No. 12), and will **DISMISS** Plaintiff's claim (Court File No. 1).

An Order shall enter.

/s/
**CURTIS L. COLLIER
CHIEF UNITED STATES DISTRICT JUDGE**